Daniel W. Zehr, Defendant in Error, v. Reuben F. Zehr, Plaintiff in Error.

Gen. No. 6,251.

1. CORPORATIONS, § 208*—*when evidence sufficient to sustain verdict in action by third person against stockholders.* Evidence *held* to warrant the amount of the verdict and the finding that plaintiff had a just demand against the corporation in which the defendants were shown to be the sole stockholders for such amount and judgment, in an action against several defendants sued jointly as partners.

2. CORPORATIONS—*what are powers as to engaging in brokerage business.* Under section 1 of the Corporation Act as originally enacted and as amended in 1915 (Cal. Ill. St. Supp. 1916, ¶ 2418), an Illinois corporation could not engage in real estate brokerage business but could engage in buying personal property.

3. PARTNERSHIP, § 243*—*when plaintiff must prove joint liability.* Under a declaration in assumpsit alleging joint liability of the defendants as partners, the plaintiff must prove such liability even without a plea denying it.

4. PARTNERSHIP, § 243*—*when plaintiff must prove joint liability of defendants.* Under a declaration alleging and a verified plea denying joint liability of several defendants as partners, such liability must be proved as to all even though only one of such defendants was served and pleaded.

5. CORPORATIONS, § 208*—*when evidence sufficient to show existence of.* Where plaintiff offered in evidence certain contracts between himself and another party referred to in such contracts as "incorporated," *held* that this was sufficient evidence against plaintiff that such other party was a corporation.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

6. CORPORATIONS, § 208*—*when plaintiff must prove joint liability of stockholders.* Where certain defendants were sued jointly as partners but were shown in proof to have been not partners but sole stockholders in a corporation, *held* that it would be necessary for plaintiff to show all defendants were liable upon the claim sued on.

7. EVIDENCE, § 33*—*when presumed common law in force in foreign State.* In the absence of proof as to the laws of another State, it is presumed the common law is in force there.

8. CORPORATIONS—*right at common law to engage in real estate brokerage business.* The common law contained no restrictions on a corporation engaging in a real estate brokerage business.

9. CORPORATIONS, § 678*—*what is basis of privilege of doing business within State.* A foreign corporation is permitted to do business in the State of Illinois only on the principle of comity.

10. CORPORATIONS, § 197*—*what is liability of all of stockholders for illegal acts of officers.* There is no statute or decision in the State of Illinois which makes all stockholders liable if the officers of a corporation in its name undertake an illegal act.

11. CORPORATIONS, § 197*—*what law governs liability of stockholders.* A mere stockholder incurs only the liability which the laws of the State where the corporation was organized places on him.

12. CORPORATIONS, § 208*—*when evidence insufficient to show joint liability of stockholders.* Evidence *held* to show plaintiff had not established joint liability of defendants, in an action against several stockholders sued jointly as partners.

Error to the Circuit Court of Peoria county; the Hon. CLYDE E. STONE, Judge, presiding. Heard in this court at the April term, 1916. Reversed with finding of facts. Opinion filed October 12, 1916.

KEITHLEY & KEITHLEY, for plaintiff in error.

SCHOLES & PRATT and ROBERT N. MCCORMICK, for defendant in error.

MR. JUSTICE DIBELL delivered the opinion of the court.

Daniel W. Zehr brought this action of assumpsit against Reuben F. Zehr, Christ Stoller, John Zehr and

L. T. Hammond, and apparently had service only on Reuben F. Zehr, as he only appeared and defended, although the summons and return are not in the record before us, nor are many of the orders of court. That the other defendants were not served and defaulted is only an inference from the fact that the verdict and the judgment, which were for $6,541, were only against Reuben F. Zehr. From that judgment Reuben F. Zehr prosecutes this writ of error. We shall call the parties plaintiff and defendant, as in the court below.

In the declaration, filed October 30, 1914, as it appears in the original record before us, the defendants were described as "co-partners, doing business under name and style of Hammond & Zehr." It appeared in argument that there were indorsements on said declaration and an affidavit of claim which were not in the record, and thereupon, by stipulation and leave of court, the parties filed a supplemental record containing said declaration filed October 30, 1914, together with a copy of the account sued on and plaintiff's affidavit of amount due and a subsequent bill of particulars. The declaration as contained in this supplemental record contains no part of the words above quoted describing the defendants as partners. As the first plea was to the declaration as amended, and answered its allegations of partnership, we infer that the part first above quoted by us was added by some subsequent amendment, and in this court plaintiff claims that defendants are liable as partners. Defendant Reuben F. Zehr filed two pleas, the first of which averred that there had never been any such partnership as Hammond & Zehr and that the four defendants named never were partners, and this plea was duly verified. The second plea was nonassumpsit, and was verified by an affidavit of Reuben F. Zehr that his defense was that plaintiff never had any such contract with this defendant nor with all the defendants, express or implied, as is sued upon in this case, and

that all the dealings of plaintiff with said defendant and with all the defendants had been settled with plaintiff before the commencement of the suit, and that at the time said suit was begun defendant did not nor did any or all of the defendants owe plaintiff anything. This affidavit was made necessary by the affidavit of plaintiff to the declaration that plaintiff's demand was for money loaned and goods sold and delivered, and that there was due to the plaintiff from the defendants, after allowing them all just credits, deductions and set-offs, $30,000. The body of the specific bill of particulars was as follows:

"(1)  320 acres of land in Iron County, Missouri, sold and delivered..........$8,000.00

"(2)  Machinery (threshing machines, etc., water tanks, etc., corn sheller, etc.) sold and delivered................ 8,300.00

"(3)  Two automobiles, sold and delivered at $2,000.00 each ................... 4,000.00

"(4)  Money loaned ..................... 107.00

"(5)  Expenses incurred and money paid out . 65.19

"(6)  Money expended for feed........... 21.65

"(7)  Commission on sale of 3 sections of land ............................ 3,840.00

"(8)  Money paid in settlement of note and interest ...................... 370.00

"(9)  Increase in value of farm in Grand Forks County, N. D.............. 5,280.00

"The date of transactions (1) and (2) is on or about April 4th, 1911; transaction (3) occurred on or about the same date; transaction (4) covered a period from on or about October 15th, 1911, to January 31st, 1912; transactions (5) and (6) and (7) extend over a period from April 4th, 1911, to April 4th, 1912; transaction (8) bears date on or about January 15th, 1912."

Under date of April 4th, three written contracts were executed which plaintiff offered in evidence as Exhibits "A," "B" and "C." They were admitted in evidence over objection. In each of them "Hammond & Zehr (incorporated)" is party of the first part

and Daniel W. Zehr is party of the second part and they are each executed by the corporation by L. T. Hammond, as president, with the corporate seal attached, and by Daniel W. Zehr. The first paragraph of Exhibit "A" provides that the first party employs the second party to find for it purchasers for lands or other property which the first party owns or has for sale in North Dakota and Minnesota, and elsewhere, and agrees to pay the second party for such services $2 per acre for all land sold by the first party to purchasers found by the second party, and a reasonable commission on all property other than lands. The fourth paragraph provides for paying to the second party his reasonable expenses in finding such purchasers. The fifth paragraph provides that the first party shall not employ any other person as its agent in Peoria and that the second party shall not work for any other person offering for sale lands in the location where the first party is now operating in North Dakota and Minnesota. The contract was limited to one year from date. Exhibit "B" is a duplicate of Exhibit "A." In Exhibit "C" the first party agrees to execute a contract for a warranty deed to convey to the second party 480 acres of land in the county of Grand Forks, North Dakota, known as the McCoulan farm, subject to a mortgage for $12,500, with interest at six per cent. per annum, principal and interest to be payable at a time satisfactory to the second party, and that the first party shall execute the deed when certain sums have been paid at certain dates, and that at the execution of said contract the second party is to convey by warranty deed to the first party certain lands described, amounting to 160 acres, in Iron county, Missouri, subject to a mortgage for $1,600, which the first party assumes and agrees to pay, and subject to certain taxes; and it also provides for merchantable abstracts to be furnished by the respective parties. It

also provides that the second party shall deliver to the
first party two threshing machine outfits, and two
water tanks with pump, hose and belting, and one
Memphis corn sheller and one 40-horse power Glide
touring car (seven passenger), subject to $800, which
the second party owes on said threshing machine out-
fit and which the first party agrees to pay. Under
these contracts the parties had various dealings under
which plaintiff claims there is due him the several
items specified in the bill of particulars, the total of
which items amounts to $29,983.84. The evidence of-
fered by plaintiff tended to establish his right to re-
cover substantially said sums from some one. De-
fendant introduced evidence tending to contradict
some of plaintiff's claims. Plaintiff's actual dealings
were mostly with Reuben F. Zehr, who was the vice
president of the corporation, "Hammond & Zehr (in-
corporated)" and with L. T. Hammond, who was its
president. There is proof that the four defendants
were together at one time in Peoria, and that Reuben
F. Zehr introduced the other three as his partners, but
this is denied by proof introduced by defendant. Two
of the defendants, not served, lived in Indiana. De-
fendants' proof makes it entirely clear that no part-
nership in the ordinary sense was ever entered into by
the four defendants, and that if any of them used the
term "partners" it was in a loose sense, without dis-
tinguishing between a partnership and a corporation.
The proof warranted the jury in finding that the four
defendants were the sole stockholders at the time here
involved, although one witness named still another
party as a stockholder in the corporation. Plaintiff's
claim that defendants are liable as partners is not
based upon any proof that any partnership was ever
actually formed between the four, but upon the claim
that the corporation, Hammond & Zehr, could not le-
gally transact business relating to real estate broker-

age in the State of Illinois, and that as these contracts made by the corporation were illegal, the stockholders are liable as partners and each partner is bound by the acts of the other partners.

Section 1 of the Corporation Act (Cal. Ill. St. Supp. 1916, ¶ 2418), authorizes corporations for any lawful purpose with certain exceptions, one of which is "real estate brokerage." In Hurd's Statutes, now before us, a comma is placed between the words, "real estate" and the word, "brokerage," but in the original session laws when this section was adopted in 1872, as it was in force when these contracts were made and these transactions were had, the comma was not there, nor is it in the session laws of 1915, when this section was amended. An Illinois corporation, therefore, could not engage in the business of real estate brokerage, but it could engage in buying the personal property described in Exhibit "C" and in the bill of particulars. Defendant produced testimony that this personal property, although received by the defendants, who were actively engaged in carrying out the business, was only received for plaintiff and was not accepted on the contract. One or two of the defendants caused the automobile in question and another automobile put with it to be overhauled at an expense of $350 and to be shipped to another defendant in the State of Indiana. They paid the money which, under the contract, was assumed by the first party, with added interest. The defendants claimed that this property was never accepted and that they afterwards sold it in Indiana to recoup themselves for the expenses that they had been to and the moneys they had paid out. There were also some horses which passed into the hands of some of the defendants. Defendant claimed a settlement and somebody did write at the foot of Exhibit "A" these words: "This contract is settled and cancelled by mutual agreement." Plain-

tiff testified that he did not know that said indorsement had ever been made thereon. He admitted that he did deliver the contracts to the defendant or his attorney, but claimed it was not as a settlement, but for another purpose. As to these conflicting contentions we think it sufficient to say, without discussing the evidence, that we are of opinion that the evidence warranted the amount of the verdict, and that plaintiff had a just demand against the corporation for the amount of the verdict and judgment.

Plaintiff alleged in his declaration, which was in assumpsit, the joint liability of the four defendants. Even without a plea denying the joint liability, it was necessary for him to prove that joint liability as to all the defendants. *United Workmen v. Zuhlke,* 129 Ill. 298. When, as here, the joint liability is denied by a plea properly verified, then for that additional reason the joint liability must be proved as to all, and that is true even if only one of several defendants is served and pleads. *Griffith v. Furry,* 30 Ill. 251; *Yocum v. Benson,* 45 Ill. 435; *M. W. Powell Co. v. Finn,* 198 Ill. 567. Section 54 of the present Practice Act (J. & A. ¶ 8591) on this subject is the same as section 35 of the Practice Act discussed in the decisions above cited. The execution by plaintiff of Exhibits "A," "B" and "C," in which the other party to the contract was called a corporation, was sufficient evidence against plaintiff that the first party to said contracts was a corporation. *West Side Auction House Co. v. Connecticut Mut. Life Ins. Co.,* 186 Ill. 156. Therefore, as the proof does not disclose any intentional partnership between the four defendants, but only that they were stockholders in Hammond & Zehr, incorporated, it was necessary for plaintiff to show that all the stockholders are liable under the facts in this case. Section 8 of the Corporation Act (J. & A. ¶ 2425), makes stockholders liable for unpaid stock under certain circumstances, but there is no proof that there was any unpaid stock here. Sec-

tions 16 and 19 (J. & A. ¶¶ 2433, 2436), make the officers and directors of a corporation liable under certain circumstances, but those circumstances are not shown here, nor is it shown that all the defendants were officers or directors. Section 18 (J. & A. ¶ 2435) makes the stockholders liable under certain circumstances, but there is no proof here to bring these stockholders within that section. Our attention is not called to any other statutory provision making stockholders liable. There is no direct proof under the laws of what State this corporation was organized. It is proved that its corporate seal was in Indiana and that it had an attorney in Indiana, and counsel for both sides seem to assume that it is an Indiana corporation. At common law there was no such restriction as in this State forbidding corporations to be engaged in real estate brokerage. In the absence of any proof as to the laws of Indiana, Minnesota, North Dakota and Missouri, we must presume that the common law is in force there. *Dalton v. Taliaferro*, 101 Ill. App. 592; *County of Jo Daviess v. Staples*, 108 Ill. App. 539. Plaintiff argues this cause as if this corporation was organized to do a real estate brokerage business, but there is no proof in this record what its corporate powers were. A witness did call it the "Hammond & Zehr Land Company," but that was not its corporate name nor was there proof from which the court could draw an inference as to the purpose for which the corporation was organized. We regard it as really immaterial in what State it was organized, for as the law of this State does not permit a corporation organized under its law to do a real estate brokerage business, no foreign corporation could lawfully do such a business in this State. A foreign corporation is permitted to do business in this State only on the principle of comity. *Carroll v. City of East St. Louis*, 67 Ill. 568. In Illinois a corporation organized for the sole purpose of buying and selling real estate is unlawful and such a corpora-

tion cannot exercise its powers in Illinois, even though
it is organized under the laws of another State.
*Walker v. Taylor,* 252 Ill. 424. For various applica-
tions and illustrations of this principle, see *Dunbar v.
American Telephone & Telegraph Co.,* 238 Ill. 456; *Im-
perial Building Co. v. Chicago Open Board of Trade,*
238 Ill. 100; *People v. Shedd,* 241 Ill. 155; *Alpena Port-
land Cement Co. v. Jenkins & Reynolds Co.,* 244 Ill.
354; *Africani Home Purchase & Loan Ass'n v. Carroll,*
267 Ill. 380. It was the intention of the parties to this
contract that plaintiff, who lived in the vicinity of
Peoria, should seek to interest parties in and about
Peoria in the purchase of lands in Minnesota, North
Dakota and elsewhere, and before the transactions
were completed there were also dealings in real estate
in Illinois. So far as the real estate transactions were
to be conducted in Illinois, they were beyond the power
of the corporation to transact, and the illegal part
seems to have been inextricably combined with the
transactions in Minnesota and North Dakota and Mis-
souri, and it may be that the entire dealings were
thereby rendered illegal. We are not aware of any
statute or decision in this State making all the stock-
holders liable if the officers of the corporation in the
name of the corporation undertake an illegal act.
Plaintiff relies upon *Wing v. Slater,* 19 R. I. 597, 33
L. R. A. 566, as so holding, but that case was under a
statute making the stockholders of a company jointly
and severally liable for its debts if the directors failed
to file a certain certificate by a certain annual date, and
even there the stockholders were relieved of liability.
There are several other States whose decisions are
there referred to, making stockholders personally li-
able for. debts of the corporation, but none of them
seem to be in point here. It is stated in 10 Cyc. 652
and 676, that where a corporation engages in a busi-
ness which is prohibited by law or public policy, its
members become liable as partners, but we are of

opinion that that is too strong a statement of the law so far as appears from authorities within our reach. In *Hawes v. Anglo-Saxon Petroleum Co.*, 101 Mass. 385, the stockholders were held liable for debts incurred before the capital was fully paid in, but that was under a statute providing that in such case each stockholder should be liable but not beyond the par value of his stock; and that case was in equity. *Same v. Same*, 111 Mass. 200, was another stage of the same case. *First Nat. Bank v. Almy*, 117 Mass. 476, was a suit at law on a note given by a corporation in its business, which business it was not yet entitled to transact because its capital stock had not all been subscribed and paid in. It was held that the stockholders could only be held liable in equity after a judgment against the corporation, and the court there said: "Even if the organization of the corporation had been defective, there would have been great difficulty in holding the associates to the liability of co-partners which they never intended to assume." In *Empire Mills v. Alston Grocery Co.* (Tex. App.), 12 L. R. A. 366, stockholders were held liable as partners, but in that case the corporation had been organized in Iowa for the sole purpose of carrying on a business in Texas for which the laws of Texas did not permit a corporation to be organized, so that the corporation was conducting a wholly illegal business. In the present case, at least one of these defendants had practically no part in the transactions here involved and apparently had no knowledge that any such contracts were made. If every stockholder is liable for the performance of a contract entered into in the corporate name by the officers of the corporation where the contract was beyond the corporate powers, then stockholders who are in the minority, who did not elect the directors, who had no knowledge that they had performed an illegal act or entered into an illegal contract, are bound. It seems to us that this is a responsibility that we ought not to fix upon a

mere stockholder when there is no statute providing therefor. It seems to us that a mere stockholder incurs the liability, and only the liability, which is placed upon stockholders by the laws of the State where the corporation is organized. *Baker v. Backus' Adm'r*, 32 Ill. 79. If this corporation had been organized in Illinois for the sole purpose of real estate brokerage, or if it had been organized under the laws of the State of Indiana for any purpose which was wholly forbidden by the laws of that State, so that it was organized to do only a business which was illegal, then every person who subscribed for a share of stock in that corporation would be charged with notice that it was organized to do only an illegal business; and under such circumstances it may very well be that the principle stated in 10 Cyc. would be applicable, but if the plaintiff here relied upon any such ground for holding the defendants liable merely as stockholders, the burden was on the plaintiff to prove that the corporation was organized solely for an illegal purpose. That proof is entirely wanting. In whatever State this corporation was organized, we must assume, in the absence of proof, that it was organized for some lawful purpose, and we are unable to hold that if such a corporation engages in one or two illegal contracts, the owner of a single share of stock would become liable as a partner for all the debts incurred under such contract or contracts, even where, as here, it amounts to nearly $30,000. We are therefore of the opinion that the evidence in this case does not fix the liability upon all of the defendants, and that therefore plaintiff cannot recover under this declaration against the one stockholder who was served and appeared. If he alone had been sued and his liability had been placed upon his violation of his duty as an officer and a director, a different question would be presented which we do not here decide.

The declaration contains only the common counts. Defendant has raised the serious question whether a recovery could be had against stockholders in such a case upon the common counts, but owing to our other conclusions above stated, we have not thought it necessary to discuss that question.

As our conclusion appears to be decisive against plaintiff we do not remand the case. If, however, plaintiff desires to retry the case in the expectation of being able to overcome our view of the facts by further proofs, he may make an application to that effect to this court during this term and it will be duly considered.

For the reasons above stated the judgment is reversed.

*Reversed with finding of facts.*

Finding of facts to be incorporated in the judgment.

We find from the evidence that plaintiff has not established the joint liability of the four defendants named in the declaration and has not established a partnership between the four defendants and therefore he cannot have a judgment against the one defendant who appeared and pleaded.