NATIONAL FERTILIZER COMPANY *vs.* FALL RIVER FIVE
CENTS SAVINGS BANK & another.

Hampshire.    September 17, 1907. — November 26, 1907.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Corporation,* Foreign.    *Abatement.    Words,* "Maintained."

The provision of St. 1903, c. 437, § 60, that "no action shall be maintained or
recovery had in any of the courts of this Commonwealth" by any foreign cor-
poration, as defined by § 58 of that chapter, "so long as it fails to comply with
the requirements of" §§ 58, 60, 66, of the same chapter, has the effect, when
non-compliance with its terms is pleaded seasonably and properly, merely to
stay proceedings until the temporary disability is removed by doing the things
and filing the papers required by the statute, and this can be done at any time,
as well after as before resort has been had to the courts, so that a plea in abate-
ment setting up a non-compliance with the statute as a bar to a suit in equity
must be overruled if the statute has been complied with after the filing of the
bill but before the hearing.

BILL IN EQUITY, filed in the Superior Court on July 30, 1906,
alleging that the plaintiff is a corporation having a usual place
of business in Hatfield, that it brought an action of contract
against the defendant Walker and attached an equity of redemp-
tion belonging to him in certain real estate in Dighton, mort-
gaged to the defendant savings bank, which thereafter sold the
real estate under a power of sale in the mortgage and received
a sum of money largely in excess of the sum due to it, and that
the plaintiff in its action against the defendant Walker had
obtained judgment and taken out execution; praying that the
amount of the proceeds of the foreclosure sale in the hands of
the defendant savings bank above the amount due to it might
be ascertained and that the defendant savings bank might be
ordered to apply $550 of the balance thus ascertained, or the
whole of it if less than that amount, in satisfaction of the plain-
tiff's execution to the amount of such balance.

The defendant pleaded in abatement that the plaintiff was a
foreign corporation within the meaning of St. 1903, c. 437, § 56;
that it had a usual place of business in this Commonwealth and
that it had not filed with the commissioner of corporations the
writings and papers required by §§ 58, 60 of the same chapter.

At the hearing of the case by *Lawton*, J., the facts appeared which are stated in substance in the opinion.

At the close of the evidence the plaintiff asked the judge for four rulings, of which the fourth was as follows: That the plaintiff, having since the bringing of this action but before the hearing of it in this court, to wit, on the 12th day of October, 1906, duly complied with all the provisions of law in this Commonwealth, the statute bar of St. 1903, c. 437, § 60, has been removed and he is entitled to maintain this suit.

The judge refused to make this ruling, and sustained the plea in abatement described above. He ordered that the bill be dismissed; and the plaintiff alleged exceptions.

*J. C. Hammond*, (*J. B. O'Donnell* with him,) for the plaintiff.

*E. W. Hardy*, (*R. W. Irwin* with him,) for the defendants.

RUGG, J. The plaintiff is a foreign corporation. Before the filing of the bill of complaint in this case, which was July 30, 1906, it had several places of business in this Commonwealth. The defendant pleaded in abatement that the plaintiff was a foreign corporation within the meaning of St. 1903, c. 437, § 56; that it had a usual place of business in this State, and had not complied with §§ 58 and 60 of that chapter. On October 12, 1906, the plaintiff corporation did all acts required by the laws of this Commonwealth of foreign corporations as prerequisites to the transaction of business, but before that day had taken no steps to comply with our laws in these respects. The single question presented is whether on this plea judgment must be entered for the defendant. The laws regulating the doing of business by foreign commercial corporations in this State have contained the provision that failure to comply with their terms should not affect the validity of contracts made by or with such corporations. St. 1884, c. 330, § 3. St. 1895, c. 157. St. 1900, c. 280. R. L. c. 126, § 6. St. 1903, c. 437, § 60. Under these statutes it has been held that contracts made before compliance with them by the corporation were valid, and actions upon such contracts could be maintained in our courts, the statutes being treated as merely directory. *Rogers Co.* v. *Simmons*, 155 Mass. 259. *Kelley* v. *Rice-Blake Lumber Co.* 167 Mass. 28. *Enterprise Brewing Co.* v. *Grime*, 173 Mass. 252. See also *Chase's Patent Elevator Co.* v. *Boston Towboat Co.* 152 Mass. 428. In § 60 of the

statute last cited, (St. 1903, c. 437,) for the first time appear the words, "No action shall be maintained or recovery had in any of the courts of this Commonwealth by any such foreign corporation so long as it fails to comply with the requirements of said sections," that is, those respecting the appointment of an agent and the filing of certain papers with the commissioner of corporations. It is to be noted that this language of prohibition does not attempt to indicate all the steps in a litigation, nor does it undertake to describe by a general phrase the course of an action in the courts from beginning to end. It does refer to two steps only, namely, the maintenance and the recovery. It must be assumed that both these words were intended to be given effect, and they must be construed, if reasonably possible, with reference to the shade of meaning, which each expresses. While it would be possible under certain circumstances to construe the phrase "maintenance of an action" as including all steps from the making of the writ to the recovery of final judgment, and while there are many authorities giving the word this meaning in certain connections, nevertheless in this statute the Legislature used "maintained" in contradistinction to "recovery." This being so, it would not be carrying into effect the legislative intent to give it a broader meaning and include within its scope the institution of an action. Using the words in their ordinary significance "maintain" carries a different meaning from "institute" or "begin," and implies that an action must be begun before it can be maintained. To give the words this construction harmonizes with the general intent of the statute, which is not to prohibit the doing of business by foreign corporations or avoid their contracts made before complying with the laws, but merely to suspend the privileges of our courts during the period of non-compliance. It is a temporary disability, to remove which lies within the power of the corporation at any time. It follows from its preservation of the validity of contracts of foreign corporations, notwithstanding their non-compliance with the law, that the purpose of the statute is not to hamper the doing of business within the range of their corporate powers, nor to put into the hands of those, with whom they may contract in reliance upon the contractual protection given by the statute, a weapon of substantial defence, which might in conceivable cases amount

to immunity from liability; but its aim is rather to bring foreign corporations under the supervision and regulation of State officials, and to give to the public the same information respecting their financial standing, their character and management which is required of domestic corporations, and also to render them amenable to ordinary legal process. *Hunnewell* v. *Duxbury*, 154 Mass. 286. *Steel* v. *Webster*, 188 Mass. 478. *Heard* v. *Pictorial Press*, 182 Mass. 530. The ample penalties against the officers and the corporation for failure to comply with our laws (St. 1903, c. 437, §§ 60, 68 and 70) and the power in equity to absolutely restrain such delinquent corporation from exercising any of its franchises or doing any business (St. 1906, c. 372), when read in connection with the provision that the contracts it makes shall not be invalid, evince a legislative intent to directly punish offences for violation of the statute, and not to impose upon the court any duty of wresting words from their ordinary sense in order to impose indirectly an additional penalty. The sovereignty is thus authorized to enforce the statute by appropriate proceedings, the corporation and its officers may each be punished, and the benefit of the courts is suspended. The statute does not say that an action shall not be begun, nor that the courts shall not receive or entertain such action nor does it prohibit maintenance forever, but only until the corporation has complied with the law. The statute constitutes an inhibition upon remedies, which may be avoided at any time. Proper allowance of terms upon a plea in abatement will protect the real rights of the parties without adding the harsh penalty of entering final judgment upon a matter which does not go to the merits of the case.

It was intimated in *Friedenwald Co.* v. *Warren*, 195 Mass. 432, that non-compliance with the statute could only be taken advantage of by a plea in abatement. This is almost tantamount to saying that such non-compliance is a mere temporary incapacity, capable of removal at any stage of the proceedings.

While the question now before us was expressly left undecided in *Friedenwald Co.* v. *Warren*, 195 Mass. 432, it there was said that the words we are now construing imply "a temporary disability merely, like that of alien enemy at common law or any other personal disability." But the result of that case is con-

clusive against the claim of the defendant. If the effect of the
statute is to wholly deprive the courts of power over any stage
of an action, until its terms have been complied with, then the
jurisdiction of the court over the subject matter is affected. In
such case, general appearance and pleading to the merits, or even
express consent of parties, cannot confer jurisdiction. It becomes
the duty of the court to consider the question of its own motion,
even though the parties have not raised nor counsel argued it.
*Baldwin* v. *Wilbraham*, 140 Mass. 459. *Santom* v. *Ballard*, 133
Mass. 464. When, therefore, the attention of the court was
directed in *Friedenwald Co.* v. *Warren* to the plaintiff's non-
compliance with the statute, its duty was at once to dismiss
the action, if the language employed in the statute was an abso-
lute prohibition of resort to the courts. That this court there
reached the conclusion, that failure to comply with the statute
must be pleaded seasonably in order to avail a defendant, must
have been premised upon the determination that the statute was
not prohibitive, but merely suspensory. The effect of the statute
is, therefore, when non-compliance with its terms is seasonably
and properly pleaded, to stay proceedings until the temporary dis-
ability is removed, which can be done at any time after, as well
as before, resort to the courts. The great weight of authority
in other jurisdictions supports the conclusion here reached.
*Buffalo Zinc & Copper Co.* v. *Crump*, 70 Ark. 525, 534. *Wool-
fort* v. *Dixie Cotton Oil Co.* 77 Ark. 203. *Southerland-Innes
Co.* v. *Chaney*, 72 Ark. 327. *Carson-Rand Co.* v. *Stern*, 129
Mo. 381. *State* v. *American Book Co.* 69 Kans. 1. *Deere* v.
*Wyland*, 69 Kans. 255, 261. *Hamilton* v. *Reeves*, 69 Kans. 844.
*Ryan Livestock & Feeding Co.* v. *Kelley*, 71 Kans. 874. *Cali-
fornia Savings & Loan Society* v. *Harris*, 111 Cal. 133. There
is nothing in conflict with this view in *Wood Co.* v. *Caldwell*,
54 Ind. 270, or in *Security Savings & Loan Association* v. *Elbert*,
153 Ind. 198. *Neuchatel Asphalte Co.* v. *Mayor of New York*,
155 N. Y. 373, and *Huttig Bros. Manuf. Co.* v. *Denny Hotel Co.*
6 Wash. 122, were proceedings to enforce liens, where the state-
ment was filed before, but the petition brought after, compliance
with the statute, and it was held that the proceedings might be
maintained. See *Blodgett* v. *Lanyon Zinc Co.* 120 Fed. Rep.
893, 897; *Wetzel & Tyler Railway* v. *Tennis Bros. Co.* 145 Fed.

Rep. 458; *Crefeld Mills* v. *Goddard*, 69 Fed. Rep. 141; *Swift* v. *Little*, 28 R. I. 108; *Hastings Industrial Co.* v. *Moran*, 143 Mich. 679.   There are contrary authorities.   *Thompson Co.* v. *Whitehed*, 185 Ill. 454.   *United Lead Co.* v. *Reedy Elevator Manuf. Co.* 222 Ill. 199.   *Heileman Brewing Co.* v. *Peimeisl*, 85 Minn. 121.. These cases, however, construe statutes of different phraseology, and proceed upon reasoning respecting the effect of statutes as to foreign corporations, which is not in harmony with the trend of decisions in this Commonwealth, as indicated in the cases cited.   *Allen* v. *Milwaukee*, 128 Wis. 678, *Cary Lombard Lumber Co.* v. *Thomas*, 92 Tenn. 587, and *Halsey* v. *Jewett Dramatic Co.* 114 App. Div. 420, deal with statutes so different from ours that, although apparently contrary to this decision, they throw no light upon the question here depending. The plaintiff's fourth request for ruling should have been given.

*Exceptions sustained.*